PHILIP R. SELLINGER
United States Attorney
By: Tazneen Shahabuddin
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: 973-645-2813
Tazneen.Shahabuddin@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. |
| Plaintiff | : | Civil Action No. |
| v. | : | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |
| 0.346 CUBIC METERS OF BRAZILIAN ROSEWOOD (*DALBERGIA NIGRA*), | : | |
| | : | |
| Defendant *in rem*. | : | |

Plaintiff, the United States of America (the "Government"), by its attorney
Philip R. Sellinger, United States Attorney for the District of New Jersey, for its
verified complaint (the "Complaint") alleges, upon information and belief, as
follows:

## I.   NATURE OF THE ACTION

1.     This action is brought by the United States of America seeking
forfeiture of 0.346 cubic meters of Brazilian rosewood (*Dalbergia nigra*)
(hereinafter, the "Defendant *in rem*" or the "defendant property").

2.     The Defendant *in rem* is subject to seizure and forfeiture to the
United States pursuant to 16 U.S.C. § 1540(e)(4)(A) of the Endangered Species
Act ("ESA") as plants taken, possessed, sold, purchased, offered for sale or

purchase, transported, delivered, received, carried, shipped, exported, or imported in violation of the ESA and the regulations promulgated thereunder.

3.      Specifically, the import of the Defendant *in rem* was contrary to the provisions of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES" or "Convention"), and thus in violation of the ESA, 16 U.S.C. § 1538(c)(1), because the Defendant *in rem* was not accompanied by valid CITES documents, that is, an import permit and export permit, or, in the alternative, a valid CITES certificate indicating the pre-Convention status of the Defendant *in rem* and required supporting information.  *See* 50 C.F.R. §§ 23.20(d)(13), 23.20(e), 23.23(c),(e)(9), 23.35(e), 23.45.

4.      The Defendant *in rem* is also subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(A) because its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation, and the merchandise is not in compliance with the applicable rule, regulation, or statute, to wit, the CITES implementing regulations, 50 C.F.R. Part 23, including but not limited to the regulations related to pre-Convention certificates and import and export permits, including 50 C.F.R. §§ 23.20(d)(13), 23.20(e), 23.23(c),(e)(9), 23.35(e), and 23.45.

5.      The Defendant *in rem* is further subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(B) because its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the Defendant *in rem* was not accompanied by such license,

permit, or authorization, to wit, a valid CITES import permit, in accordance with 50 C.F.R. § 23.20(e).

## II.   JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355 and 16 U.S.C. § 1540(c).

7.    Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b) because the property at issue, the Defendant *in rem*, may be found in the District of New Jersey.  *See* 28 U.S.C. § 1355(b)(1)(B).

8.    The Defendant *in rem* is currently in the custody of the United States Department of the Interior, Fish and Wildlife Service ("USFWS"), in its Office of Law Enforcement facility in Elizabeth, New Jersey.  A portion of the defendant property has been transferred to the USFWS National Fish and Wildlife Forensics Laboratory in Ashland, Oregon, from which a sample was transferred to Lawrence Livermore National Laboratory in Livermore, California, for testing.

### III.   LEGAL BACKGROUND

**A.   The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES)**

9.      The United States has been a party to the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249 (entered into force July 1, 1975), since March 3, 1973.  There are currently 184 countries, including the United States, that are signatories to CITES.

10.      The purpose of CITES is to protect species that are, or may become, threatened with extinction by international trade.  CITES established a system of import and export restrictions to protect these species from overexploitation through international trade.  Different levels of trade regulation are provided depending on the status of the listed species and the contribution trade makes to the decline of the species.  CITES lists the affected species on Appendices I, II, and III to the treaty, with each appendix specifying trade controls corresponding to the threat level facing the species listed therein.

11.      Article I(a) of CITES defines "species" as "any species, subspecies, or geographically separate population thereof."  Article I(b) defines "specimen" as "(i) any animal or plant, whether alive or dead; . . . (iii) in the case of a plant: for species included in Appendix I, any readily recognizable part or derivative thereof . . . ."

12.      CITES operates by creating a system of permits to closely regulate the trade in listed species.  Each country that is a party to CITES must report

all of the permits and certificates it issues to the CITES Secretariat in Geneva, Switzerland every year for use in reviewing whether a species requires additional conservation measures.

13.     CITES requires each signatory country to prohibit shipments that violate CITES and to take measures to enforce CITES.  Additionally, CITES requires each country to implement measures that penalize CITES violations, and that provide for the confiscation of specimens imported in violation of CITES.  Signatory countries may adopt domestic laws that are stricter than what CITES requires, but must at a minimum enact laws that ensure compliance with CITES.

14.     Violations of the CITES permit regulations undermine worldwide conservation efforts as well as the treaty obligations of the United States.

15.     Appendix I to CITES lists the most highly protected species.  It includes those species that are threatened with extinction whose survival is or may be affected by trade.  The importation or exportation of an Appendix I species for any purpose is authorized only in exceptional circumstances and is generally disallowed for specimens to be used for primarily commercial purposes.

16.     Brazilian rosewood (*Dalbergia nigra*) is listed on Appendix I and has been so listed in CITES since 1992.

17.     With certain limited exceptions, in order to trade in any species listed in Appendix I, the exporter must obtain both a valid CITES Appendix I Export Permit or Re-Export Certificate from the exporting country and a valid

CITES Appendix I Import Permit from the country of import.  *See* CITES art. III,

§§ 2, 3; 50 C.F.R. § 23.20(e).

18.    A CITES Appendix I Export Permit can be obtained only if the

CITES Scientific and Management Authorities of the exporting country have

determined that trade in this specimen will not be detrimental to the survival of

the species, that the specimen was legally acquired under the domestic laws of

that country, and that an import permit has been granted for the specimen.

CITES art. III, § 2.

19.    A CITES Appendix I Import Permit can only be obtained if the

CITES Scientific and Management Authorities of the importing country have

determined that trade in this specimen will not be for purposes detrimental to

the survival of the species and that the specimen will not be used for primarily

commercial purposes.  CITES art. III, § 3; 50 C.F.R. §  23.62(a).

20.    The Secretary of the Interior has been designated as the

Management Authority and the Scientific Authority for the United States and

carries out the functions of each Authority through the USFWS. 16 U.S.C.

§ 1537a(a).

21.    As a matter of federal law, it is unlawful to import into the United

States—absent limited, defined exemptions—any plants listed on CITES

Appendix I unless both an import permit issued by the United States and

either a valid export permit issued by the country of origin or a re-export

certificate from the country of re-export are obtained prior to such exportation

to the United States.  *See* 50 C.F.R. §§ 23.13, 23.19, 23.20(e), 23.35(e).

22.     CITES-listed specimens may be subject to the pre-Convention exemption, which "exempts a pre-Convention specimen from [certain] standard permitting requirements in [CITES] when the exporting or re-exporting country is satisfied that the specimen was acquired before the provisions of CITES applied to it and issues a CITES document to that effect."  50 C.F.R. § 23.45(a); *see also* CITES Article VII(2); CITES, Resolution Conf. 13.6 (Rev. CoP18).

23.     Where the pre-Convention exemption applies to an Appendix I specimen, no import permit is required.  50 C.F.R. § 23.45(b)(3).

24.     To import a specimen in reliance on the pre-Convention exemption, the shipment must be accompanied by a valid CITES document—a pre-Convention certificate—indicating the specimen's pre-Convention status and issued by the CITES Management Authority in the exporting or re-exporting country.  50 C.F.R. §§ 23.20(d)(13), 23.45.  In order to be valid in the United States, the CITES pre-Convention certificate issued by the exporting or re-exporting country must meet the requirements set forth in the federal regulations implementing CITES in the United States, 50 C.F.R. §§ 23.23-23.26, 23.45.

25.     Additionally, pursuant to federal regulations, "[t]rade in a specimen under the pre-Convention exemption is allowed only if the importing country will accept a pre-Convention certificate."  50 C.F.R. § 23.45(b)(1).  For imports into the United States, the USFWS will accept a foreign pre-Convention certificate only if certain criteria are met, including that the USFWS has been provided with sufficient information to find that "[t]he specimen was removed

from the wild or born or propagated in a controlled environment before the date CITES first applied to it, or is a product (including a manufactured item) or derivative made from such specimen."  50 C.F.R. § 23.45(d); *see also* 50 C.F.R. § 23.34; CITES, Resolution Conf. 13.6 (Rev. CoP18).

> **B.**    **The Endangered Species Act**

26.    In the United States, CITES is enforced through the Endangered Species Act of 1973 (ESA), 16 U.S.C. § 1531 *et seq.*, and its accompanying regulations, 50 C.F.R. Part 23.

27.    The Endangered Species Act defines "plant" as "any member of the plant kingdom, including seeds, roots and other parts thereof."  16 U.S.C. § 1532(14).

28.    The ESA specifically prohibits trade in any specimen contrary to the provisions of CITES, 16 U.S.C. § 1538(c)(l).

29.    The ESA regulations provide detailed instructions regarding the need for proper CITES permits and certificates.  *See* 50 C.F.R. Part 23.  These regulations include a requirement that each importation of an Appendix I specimen be accompanied by a valid CITES export permit and a valid CITES import permit unless an exemption applies.  *See* 50 C.F.R. § 23.20(e).

30.    The ESA authorizes the USFWS to seize any specimen imported, exported, or possessed in violation of the ESA or its implementing regulations— including those setting forth the requirements for CITES permits and certificates—and mandates that such specimen is subject to forfeiture.  16 U.S.C. § 1540(e)(4)(A).

### III.   FACTUAL ALLEGATIONS

**A.   <u>Brazilian Rosewood</u>**

31.     Brazilian rosewood (*Dalbergia nigra*) is native to the eastern parts of Brazil and is one species of a genus comprising more than 100 species. Brazilian rosewood is the only species within the genus *Dalbergia* to be listed in CITES Appendix I; others are listed in Appendix II.  Brazilian rosewood can reach approximately 125 feet in height in coastal areas, its heartwood ranges in color from brown to purplish-black, and it is durable.

32.     Brazilian rosewood has been traded for hundreds of years and is highly prized for its appearance, and high resonance and acoustic qualities, making it sought after in the manufacture of furniture and musical instruments, in particular high-end guitars as well as mandolins, violins, and pianos.

33.     Populations of Brazilian rosewood have been subjected to extremely high levels of deforestation in the past.  Excessive harvesting of the species since colonial times in Brazil's Atlantic Forest and continued illegal logging and habitat loss have led to its ongoing endangerment.

34.     In 2020, the Atlantic Forest retained just 7% of its original cover and Brazilian rosewood now only occurs in fragmented, small populations with low genetic variability and limited regeneration in the Brazilian states of Bahia, Minas Gerais, Espírito Santo, Rio de Janeiro and São Paulo.

**B.**   **The Attempted Importation of the Defendant *in rem***

35.   On or about May 3, 2022, the Defendant *in rem* arrived at Newark Liberty International Airport in Newark, New Jersey, in the District of New Jersey, on a United Airlines flight from São Paulo, Brazil.[1]

36.   The air waybill for the shipment containing the Defendant *in rem* lists Michael Reid ("Reid") as the consignee of the shipment and identifies the cargo as "wood pieces – Dalbergia Nigra."

37.   The commercial invoices and packing lists accompanying the Defendant *in rem* detailed the contents of the 14 boxes in the shipment—6 boxes contained Brazilian rosewood fretboards used in the manufacture of guitars and 8 contained Brazilian rosewood guitar necks used in the manufacture of guitars—a total of 0.346 cubic meters of Brazilian rosewood. The commercial invoices and packing lists identified Reid as the importer of the shipment.

38.   The consignee address listed on the air waybill received twelve shipments from Brazil of cargo described as "Brazilian Rosewood Veneer for arts" between September 10, 2020 and March 29, 2021.  Rodrigo Pereira Moreira is listed as the shipper for the prior twelve shipments of Brazilian rosewood sent to the consignee's address.

39.   The Defendant *in rem* was accompanied by a CITES document issued by the Instituto Brasileiro do Meio Ambiente e dos Recursos Naturais Renováveis ("IBAMA"), Brazil's CITES Management Authority.  No other CITES

---

[1] Brazil is a party to CITES.

documents, including a CITES Appendix I Import Permit issued by the USFWS, were provided for the Defendant *in rem*.

40.    The CITES document provided was stamped and signed by IBAMA as the Issuing Management Authority, marked as a "permit for export" with a corresponding permit number and stamp number, and identified Reid as the importer of the shipment, the United States as the country of import, and the shipment contents as "Dalbergia nigra . . . Brazilian rosewood."  In addition, it listed the "purpose of the transaction" as "law enforcement / Ordem Judicial" and noted in a comment box that the "export permit issued under court order . . . . Brazilian court ruled that the wood specified on this permit is pre-convention."  Finally, the source code for the Defendant *in rem* was marked as "O," designating pre-Convention specimens.

41.    To be valid, CITES permits and certificates must comply with a number of requirements of Article VI of CITES, relevant Resolutions of the Conferences of the Parties, and the federal regulations that implement CITES in the United States.

42.    These requirements are intended to prevent the use of false or invalid permits for fraudulent purposes.  Maintenance of the integrity of the CITES permit system is essential to the effectiveness of the entire system of wildlife and plant trade restrictions established by CITES.  Unless the system of permits and certificates used by CITES to enforce its trade restrictions is enforced uniformly, protected wildlife and plants may be overexploited through international trade.  *See* 50 C.F.R. §§ 23.1, 23.4.

43. Per several United States regulations implementing CITES, the CITES document issued for the Defendant *in rem* is not a valid CITES pre-Convention certificate.

(a) It was not validated; the document is blank in the space reserved for "Customs Endorsement," including the box marked "Qtd./Qty," where the actual quantity of the specimen being exported should have been verified, and contains no signature on the included signature line. 50 C.F.R. § 23.23(c)(21) ("A CITES document is valid only when it contains . . . . validation or certification [of] the actual quantity of specimens exported or re-exported: (i) Using the same units of measurement as those on the CITES document [and] (ii) Validated or certified by the stamp or seal and signature of the inspecting authority at the time of export or re-export.").

(b) It contains no pre-1992 date of acquisition for the Defendant *in rem*, and therefore does not meet the requirements of a pre-Convention certificate set forth in 50 C.F.R. § 23.23(e)(9): A pre-Convention certificate must contain both "(i) An indication on the face of the CITES document that the specimen is pre-Convention [and] (ii) *A date that shows the specimen was acquired before the date the Convention first applied to it.*" (Emphasis added.)

(c) It does not contain an accurate purpose code denoting the true purpose of the transaction, *i.e.*, the purpose for which the Defendant *in rem* was being exported to the United States. 50 C.F.R. § 23.3(c)(11); *see also* CITES, Resolution Conf. 12.3 (Rev. CoP18). As indicated in the commercial invoices and packing lists accompanying the shipment, the importer was obtaining Brazilian rosewood pieces, specifically fretboards and guitar necks, for use in guitar manufacturing—that is, commercial use. The document misidentifies the "purpose of the transaction" as "law enforcement."

44. Because the CITES document provided with the Defendant *in rem* is not a valid pre-Convention certificate, the pre-Convention exemption to the CITES framework does not apply. Thus, where no exemption applies, in order to be lawfully imported into the United States pursuant to the regulations governing Appendix I specimens, the Defendant *in rem* would have required

-12-

both a valid CITES Appendix I Export Permit from IBAMA and a valid CITES Appendix I Import Permit from USFWS.  No valid CITES import permit was provided or sought for the Defendant *in rem*.

45.     Per several United States CITES regulations, the CITES document provided with the Defendant *in rem* is also not a valid CITES export permit for the following reasons:

(a)     It was not validated.  50 C.F.R. § 23.23(c)(21).

(b)     It does not contain an accurate purpose code.  50 C.F.R. § 23.23(c)(11); *see also* CITES, Resolution Conf. 12.3 (Rev. CoP18).

(c)     It was issued without prior issuance of an import permit and without prior written confirmation from the USFWS that an import permit would be issued.  50 C.F.R. § 23.35(e)(1).

46.     As the Defendant *in rem* consisted of Brazilian rosewood imported without a valid CITES pre-Convention certificate, the pre-Convention exemption does not apply.  Thus, without a valid CITES import permit, the defendant property could not be imported into the United States in compliance with CITES and the ESA.  The import of the defendant *in rem* was further in violation of CITES and the ESA because it lacked a valid CITES export permit.

**C.     The Administrative Detention and Forfeiture Proceedings**

47.     After the arrival of the Defendant *in rem* in the District of New Jersey, on or about May 5, 2022, USFWS wildlife inspectors, assisted by USFWS Special Agent Frances Toledo Rodriguez, conducted a physical inspection of the defendant property in the United Airlines cargo area at Newark Liberty International Airport.  The inspectors verified that the shipment

containing the Defendant *in rem* did in fact consist of wood pieces, identified in accompanying documents as Brazilian rosewood.  The documents held by the airline contained a copy of the CITES document accompanying the Defendant *in rem*.

48.    On or about May 5, 2022, Special Agent Rodriguez obtained the original CITES document for the Defendant *in rem* from the U.S. Customs and Border Protection Air Cargo Exam Facility and observed that it was not valid.

49.    On or about May 5, 2022, Special Agent Rodriguez returned to the United Airlines cargo area and seized the shipment containing the Defendant *in rem*.

50.    On or about May 5, 2022, Special Agent Rodriguez signed a property receipt for the Defendant *in rem* at the United Airlines cargo area.  The Defendant *in rem* was subsequently transported to the USFWS's Office of Law Enforcement facility located in Elizabeth, New Jersey, where the Defendant *in rem* was placed in a secured evidence room.

51.    On or about May 11, 2022, USFWS Wildlife Inspector Fiona Williams, at the request of Special Agent Rodriguez, contacted the customs broker identified on the commercial invoices and packing lists accompanying the Defendant *in rem*, Mary Janak ("Janak"), to request that Janak provide USFWS with the IBAMA export certificate and the Brazilian "Documento de Origem Florestal" (or Document of Forest Origin) for the Defendant *in rem*.  In response, Janak indicated that the importer Reid had signed a letter rejecting the shipment of the Defendant *in rem*.

52.     On or about May 12, 2022, Fernando Costa ("Costa"), International Logistics Coordinator for GP Cargo Agenciamento de Cargas, the foreign freight forwarder for the shipment, sent a copy of the letter to Wildlife Inspector Williams.

53.     In an undated letter addressed to "Brazilian Customs" and purportedly signed by Reid, Reid refused the shipment of the Defendant *in rem* that arrived in New Jersey.  The reason for the refusal was the lack of a valid CITES certificate: "We have received the just the CITES certificate without the signature, therefore, we understood that IBAMA's inspection hasn't been done. As the result, we have to refuse the cargo and import it back just with the proper CITES certificate signed by Ibama."

54.     On or about May 18, 2022, Wildlife Inspector Williams, again at the request of Special Agent Rodriguez, contacted Janak and Costa to request the supporting documentation used to obtain the CITES document from IBAMA.  In response, Janak sent back a document in Portuguese, which USFWS determined was a report written in connection with a Brazilian court proceeding involving IBAMA and the exporter listed on the documents accompanying the Defendant *in rem* (including the invalid CITES document), Nobrelei Extração de Madeiras Florestais Sustentáveis (the "Exporter").  The report concluded that the Exporter's supply of Brazilian rosewood had been cut prior to 1992, placing it in pre-Convention status.[2]

---

[2] On or about July 14, 2022, the USFWS obtained court documents from the Brazilian proceeding and determined that the court had ordered IBAMA to issue a pre-Convention

55.     The report did not contain sufficient information for the USFWS to find that the Defendant *in rem* was removed from the wild or born or propagated in a controlled environment before 1992, *i.e.*, the date CITES first applied to it.  Therefore, the USFWS rejected the purported pre-Convention certification.  Accordingly, even if the pre-Convention CITES document had been facially valid—which it was not—the USFWS would not accept it, and trade in the Defendant *in rem* was disallowed.  *See* 50 C.F.R. §§ 23.45(b)(1), (d)(1).

56.     On or about May 20, 2022, Jose Frota ("Frota") contacted Wildlife Inspector Williams and identified himself as the owner of the Exporter and also the original owner of the Brazilian rosewood contained in the defendant property.  Frota expressed his belief that the letter submitted to Brazilian Customs would be sufficient to re-export the Defendant *in rem* to Brazil.  Frota said that he had requested an import permit from IBAMA for the re-export but admitted that he had not asked for re-export authorization from the USFWS, as required.

57.     On or about May 24, 2022, Special Agent Rodriguez sent a portion of the Defendant *in rem* to the National Fish and Wildlife Forensics Laboratory in Ashland, Oregon for testing, which confirmed that the defendant property is Brazilian rosewood (*Dalbergia nigra*).

---

certificate and other documents to enable the Exporter to export approximately 22,600 cubic meters of Brazilian rosewood.

58.     On or about June 24, 2022, the USFWS sent a Notice of Seizure and Proposed Forfeiture to Reid and the Exporter notifying them of USFWS's seizure of the Defendant *in rem*.  The Notice also explained the administrative forfeiture process and identified options available to contest the proposed administrative forfeiture.

59.     On or about July 9, 2022, an attorney for Reid contacted USFWS via email to ask how the CITES document for the Defendant *in rem* could be validated or re-issued.  He wrote, "The cargo arrived with a CITES permit that was not signed by the Management Authority . . . .  Background: The cargo was being held in Brazil waiting for IBAMA inspection and the CITES signature that was scheduled for May 3, 2022.  However, United Airlines unilaterally moved the cargo to an earlier flight on May 1, 2022, before the inspection and without informing anyone."

60.     On or about July 15, 2022, the attorney for Reid wrote to ask USFWS to "exercise its discretion" under 50 C.F.R. § 23.53 regarding the acceptance of retrospective CITES documents.[3]

61.     On or about September 6, 2022, Reid filed a claim in the USFWS administrative forfeiture proceedings requesting that the Government file a judicial forfeiture action.  He submitted a Seized Asset Claim Form and listed

---

[3]  "When specific conditions are met, a retrospective CITES document may be issued to authorize trade that has taken place without a CITES document or to correct certain technical errors in a CITES document after the authorized activity has occurred."  50 C.F.R. § 23.53(a).  Among other limitations, "[a] retrospective document may not be issued for Appendix-I specimens except for certain specimens for personal use . . . ."  50 C.F.R. § 23.53(b)(1).

the contents of the Defendant *in rem* as items in which he "claim[s] an interest."

62.     In his claim, Reid did not explain his interest in the Defendant *in rem*. Reid's Seized Asset Claim Form merely listed and appended copies of the CITES document, in which he was listed as the importer, and the air waybill, in which he was listed as the consignee.

63.     In the Seized Asset Claim Form, which Reid signed, Reid "attest[ed] and declare[d] under penalty of perjury that [his] claim to this property is not frivolous" and that he "underst[ood] that a false statement or claim may subject [him] to prosecution . . . and is punishable by a fine and up to five years imprisonment."

64.     In a letter dated November 1, 2022 and addressed to an attorney-advisor for the Department of the Interior, the attorney for Reid wrote that "Mr. Reid has zero property interest in the Brazilian Rosewood and received no financial benefits or other compensation as the importer . . . . Mr. Reid is prepared to provide an affidavit that explains why he has no property interest . . . . Further, the party who does have 100% property interest in the Brazilian Rosewood will provide an affidavit explaining why he has the property interest, [and] also explaining Mr. Reid served without compensation as a long-time friend . . . ."

65.     At no time did Reid obtain or provide a valid CITES pre-Convention certificate, CITES export permit, or CITES import permit.

## IV.   CLAIMS FOR FORFEITURE

The statutory provisions pursuant to which the Defendant *in rem* is

subject to seizure and forfeiture are set forth below.

### A.   First Claim for Forfeiture – The Endangered Species Act

66.     The ESA makes it unlawful for:

> [A]ny person subject to the jurisdiction of the United
> States to engage in any trade in any specimens
> contrary to the provisions of [CITES], or to possess
> any specimens traded contrary to the provisions of
> [CITES], including the definitions of terms in article I
> thereof.

16 U.S.C. § 1538(c)(1).

67.     Title 16, United States Code, Section 1540 of the ESA provides in

pertinent part that:

> All fish or wildlife or plants taken, possessed, sold,
> purchased, offered for sale or purchase, transported,
> delivered, received, carried, shipped, exported, or
> imported contrary to the provisions of this chapter,
> any regulation made pursuant thereto, or any permit
> or certificate issued hereunder shall be subject to
> forfeiture to the United States.

16 U.S.C. § 1540(e)(4)(A).

68.     Brazilian rosewood (*Dalbergia nigra*) has been listed in CITES

Appendix I since 1992.

69.     Thus, the Defendant *in rem* is subject to forfeiture pursuant to 16

U.S.C. § 1540(e)(4)(A) as a plant imported into the United States in violation of

the law in that the Defendant *in rem* is a CITES Appendix I species that was

transported, delivered, received, carried, shipped, exported, or imported

contrary to CITES and its permit requirements, in violation of the ESA, 16 U.S.C. § 1538(c)(1), and federal regulations implementing CITES, 50 C.F.R. Part 23.

**B.    Second Claim for Forfeiture – Importation Contrary to Law**

70.    Title 19, United States Code, Section 1595a(c)(2)(A) subjects to seizure and forfeiture "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law" if "its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute."

71.    The Defendant *in rem* is subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(A) as merchandise whose importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the Defendant *in rem* was not in compliance with the applicable rule, regulation, or statute.  The Defendant *in rem* was issued neither a valid pre-Convention certificate in accordance with 50 C.F.R. §§ 23.20(d)(13), 23.23(c),(e)(9), 23.45; nor valid import and export permits for trade in accordance with 50 C.F.R. §§ 23.20(e), 23.23(c), 23.35(e).

**C.    Third Claim for Forfeiture – Importation Contrary to Law**

72.    Title 19, United States Code, Section 1595a(c)(2)(B) subjects to seizure and forfeiture "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law" if "its importation or entry requires a license, permit or other authorization of an agency of the United States

-20-

Government and the merchandise is not accompanied by such license, permit, or authorization."

73.     The Defendant *in rem* is subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(B) as merchandise whose importation or entry requires a license, permit or other authorization of an agency of the United States Government and the Defendant *in rem* was not accompanied by such license, permit, or authorization, to wit, a valid CITES import permit, in accordance with 50 C.F.R. § 23.20(e).

## **REQUEST FOR RELIEF**

WHEREFORE plaintiff, the United States of America, requests that judgment be entered in its favor and against the Defendant *in rem*, and that process issue to enforce the forfeiture of the Defendant *in rem*, and that all persons having an interest in the Defendant *in rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant *in rem* to the United States of America for disposition according to law, and that this Court grant the Government such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

Dated:   Newark, New Jersey
              December 5, 2022


                           PHILIP R. SELLINGER
                           UNITED STATES ATTORNEY


                           By: _____
                                 Tazneen Shahabuddin
                                 Assistant United States Attorney

<u>VERIFICATION</u>

STATE OF NEW JERSEY      :
                                 : ss.
COUNTY OF ESSEX          :

I, Frances Toledo Rodriguez, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Fish and Wildlife Service and that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my information and the grounds of my belief include the official files and records of the United States, information supplied to me by other law enforcement officers, and my own investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

_____
Frances Toledo Rodriguez
Special Agent
United States Fish and Wildlife Service
Office of Law Enforcement